WING SING LUNG & CO. et al. v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. June 27, 1910.)

No. 872.

1. CUSTOMS DUTIES (§ 38*)—CLASSIFICATION—CHINESE SAUSAGES—"BOLOGNA SAUSAGES."

The provision in Tariff Act July 24, 1897, c. 11, § 2, Free List, par. 655, 30 Stat. 201 (U. S. Comp. St. 1901, p. 1687), for "sausages, Bologna," does not include sausages of Chinese origin, under the circumstances of this case.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 38.*]

2. CUSTOMS DUTIES (§ 17*)—CONSTRUCTION OF STATUTES—FLUCTUATING DEPARTMENTAL PRACTICE.

Held, that sundry official rulings as to the scope of a tariff provision did not go so far as to establish a departmental usage of a determinate character, as they fluctuated with regard to several importations in accordance with the peculiar facts in reference thereto.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 17.*]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For decision below, see 171 Fed. 906, affirming a decision by the Board of United States General Appraisers (G. A. 6,250, T. D. 29,-923), which had affirmed the assessment of duty by the collector of customs at the port of Boston. The case was submitted on briefs, without oral argument.

Searle & Pillsbury, Guy A. Ham, and William E. Waterhouse, for importers.

D. Frank Lloyd, Asst. Atty. Gen., and Thomas M. Lane, Sp. Atty., for the United States.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This is a customs case, depending on the application of paragraph 655 of the tariff act of 1897 (Act July 24, 1897, c. 11, 30 Stat. 201 [U. S. Comp. St. 1901, p. 1687]), part of the free list thereof, containing only the following words: "Sausages, Bologna." The decisions of the collector, the Board of General Appraisers, and the Circuit Court were in favor of the United States; and, as the questions involved are not questions of law, but purely questions of fact, and as in no event can it be said that the importers make a clear case, the usual rule firmly established by the Supreme Court applies, that the concurrence of two tribunals with reference to a mere question of fact is not to be set aside, except for very grave reasons. Nevertheless, the ingenious argument submitted for the importers justifies us in giving the matter some further attention.

The importers admit that this is "common Chinese sausage," and they state what are the component parts. They maintain that the expert called in behalf of the importers testified that in the trade the term "Bologna sausages" means sausages similar in structure to those in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

question here. Nevertheless, the expert referred to, who is an Italian, and a large dealer in sausages imported from Italy and nearby countries, and perhaps in sausages made in the United States, closes his testimony as follows:

"Q. When you were testifying in answer to Mr. Garland's cross, you said 'they,' meaning the importation in question, 'were not known in the trade as Bologna sausage.' A. Not in the United States."

There is, indeed, no evidence in the record that any such trade nomenclature ever included the "common Chinese sausage."

However, what the importers rely on are sundry rulings of the officials which undoubtedly broaden out the application of the words "sausages, Bologna," as normally understood. Nevertheless they do not go so far as to establish a departmental usage of a determinate character, because they fluctuate with regard to several importations in accordance with the peculiar facts in reference thereto; and each of them disposes of a special question of fact only, and none deals in any way with any such rule of law, or any such general rule of construction, as would give the statute any specific effect. The ruling of Assistant Secretary Tichenor of April 17, 1899 (T. D. 9,340), goes the farthest of any, in that it permits the classification of "Frankfurter sausages" under the paragraph in question, stating "that the materials from which they are made are similar to those used in the manufacture of German sausages, which are admitted free as Bologna sausages." Therefore the "Frankfurters" were held substantially the same in quality as Bolognas strictly and geographically so designated, so that the only difference was with reference to the particular locality where they were made. They were apparently the same things, although with a difference in name. They might also come, in a broad way, through kindredship, within the rule declared in S. S. Pierce Co. v. United States, decided in the Circuit Court for the District of Massachusetts on February 12, 1910. 176 Fed. 440. As the United States justly say, the material of this importation consists of "chunks of fat and lean beef in rather coarse condition," "the meat is not chopped fine," "and it is a crude, unsavory looking product, having neither the qualities of Bologna sausage nor its reputation." It is a fair adaptation of the language of the importers to observe that it "seems like straining the doctrine of commercial designation beyond its limits to hold that an article of Chinese origin, imported and dealt in exclusively by Chinese, and sold exclusively to Chinese," and of the character shown here, and without the aid of any trade nomenclature, can be held to be covered in by the statutory expression "sausages, Bologna."

The judgment of the Circuit Court is affirmed.